[No. B113292. Second Dist., Div. One. Mar. 26, 1998.]

NORMA GUTIERREZ, Plaintiff and Respondent, v.
BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION, Defendant and Appellant.

**COUNSEL**

David L. Muir and Margaret L. Oldendorf for Defendant and Appellant.

Lewis, Marenstein, Wicke & Sherwin and Thomas J. Wicke for Plaintiff and Respondent.

**OPINION**

**VOGEL (MIRIAM A.) J.**—A county employee applied for and was granted non-service-connected disability retirement benefits, which he received until his death about two years later. Thereafter, the employee's widow continued to receive monthly benefits (about 60 percent of the amount her husband had received). Two years after the employee's death, the widow claimed that her husband's illness and death had been service-connected, and she attempted to "convert" her survivor's benefits so that her monthly payments would be increased. When the county refused, the widow

filed a petition for a writ of mandate, which the trial court granted. We reverse.

FACTS

In 1981, Sal Gutierrez was hired by the Los Angeles County Sheriff's Department as a Deputy Marshal. In January 1991, Gutierrez submitted an "Application for Disability Retirement" to the Los Angeles County Employees Retirement Association (LACERA) in which he requested a "Non-service-connected disability retirement." On the application form, Gutierrez stated that he had been suffering from "progressive systemic sclerosis with severe damage to the lungs" since April 1981, and that the cause of his "scleroderma" was "unknown." In July 1991, LACERA granted "a nonservice-connected disability retirement" to Gutierrez, and monthly benefits were thereafter paid to him. In January 1993, Gutierrez died, and his widow (Norma Gutierrez) began receiving monthly survivor's benefits equal to 60 percent of the allowance that Gutierrez had been receiving.

At some point after Gutierrez's death, Mrs. Gutierrez applied for death benefits under the Workers' Compensation Act, alleging that Gutierrez's condition and his death were related to or aggravated by his employment as a deputy marshal. In November 1994, her application was granted. In April 1995, Mrs. Gutierrez wrote to LACERA, requesting that it accept an application for *service-connected* disability survivor benefits (so that her monthly benefits would be increased). On October 26, LACERA denied Mrs. Gutierrez's request, explaining that "[s]urvivor benefits are based on the status of the member at the time of death" and that, since Gutierrez had never applied for service-connected disability benefits, LACERA was unable to grant Mrs. Gutierrez's claim for service-connected survivor benefits.

Mrs. Gutierrez then filed a petition for a writ of mandate, asking the trial court to compel LACERA to accept her application for service-connected survivor benefits. Over LACERA's opposition, the trial court granted Mrs. Gutierrez's petition, finding that LACERA should have determined when Gutierrez (or Mrs. Gutierrez) discovered (or should have discovered) that his disability was service-connected, and should have made available some sort of "equitable" procedure. to at least permit Mrs. Gutierrez to apply for service-connected survivor benefits. LACERA appeals.

## DISCUSSION

██ LACERA contends the disability retirement statutes do not permit a member's spouse to apply for *service-connected* survivor's benefits after the death of a member who has been receiving *nonservice-connected* disability benefits.[1] We agree.

The County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.)[2] "recognize[s] a public obligation to county . . . employees who become incapacitated" and establishes a system of retirement compensation and death benefits. (§ 31451.) Under section 31720, LACERA is authorized to grant a disability retirement to a member if, regardless of the member's length of service, "[t]he member's incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity" or, alternatively, if the member has five years of service and suffers from any injury or disease (without regard to whether it is service connected). In either event, the member may be retired for disability upon his application (§ 31721), which "shall be made [1] while the member is in service, [or 2] within four months after his discontinuance of service, or [3] while from the date of discontinuance of service to the time of the application he is continuously physically or mentally incapacitated to perform his duties" (§ 31722).

Section 31722 is not ambiguous or unclear. It permits an application for disability benefits to be made at three different times, none of which apply to the time at which Mrs. Gutierrez attempted to apply for revised death benefits. Section 31722 does not permit a late application for one kind of disability retirement after the other kind has been applied for and received (or at any time). It has no "delayed discovery" provision. It does not permit a new or renewed or changed application for survivors benefits of one kind when the decedent was already receiving the other kind of disability benefits. Indeed, section 31725.8 expressly precludes the path that Mrs. Gutierrez attempted to take, by providing that "[i]f any member dies after electing to receive non-service-connected disability retirement and before the question of his entitlement to service-connected disability retirement is finally resolved [by a timely request during his lifetime for a determination that his disability is service-connected], *the rights of his beneficiary shall be those*

---

[1] For purposes of this opinion, "member" means a County employee.
[2] Unless otherwise stated, all section references are to the Government Code.

*selected by the member at the time he elected to receive non-service-connected disability retirement.*"[3] (Italics added.)

Whatever merit there might be to the trial court's finding that it would be "equitable" to read into section 31722 a provision that would permit Mrs. Gutierrez to apply for conversion of her non-service-related benefits to service-related benefits, it is not the job of the courts to expand the scope of retirement benefits created by the Legislature and spelled out in a detailed statutory scheme. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976] [in construing statutory provisions " 'a court is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language' "]; *Huening* v. *Eu* (1991) 231 Cal.App.3d 766, 779 [282 Cal.Rptr. 664] [it is not the province of courts to rewrite statutory enactments to reach what might be considered a more rational result].) The case cited by the trial court and relied on by Mrs. Gutierrez (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 380-383 [216 Cal.Rptr. 733, 703 P.2d 73]) is inapposite. *Hittle* involved an estoppel based upon a county's failure to advise its member of his retirement options, and the member's inadvertent waiver of his right to apply for disability retirement benefits. In our case, Gutierrez *did* apply for and receive nonservice-connected disability benefits. When his application was accepted, he was expressly advised by LACERA that his "application substantiate[d his] claim of disability and its causation." He was told that he had a right to appeal within 30 days if he disagreed "with any aspect of this decision," but he did not do so then or at any time. "[I]nformation regarding the multiple benefits available to retirees of Los Angeles County" was forwarded to Gutierrez along with the notice that his application had been granted. He was given a phone number to call if he had any questions. There is no factual basis for an estoppel.[4]

[3]Unless authorized by statute, an administrative agency acting in an adjudicatory capacity (as LACERA does when it decides whether to grant disability retirement benefits) may not in any event reconsider or reopen a decision. (*Heap* v. *City of Los Angeles* (1936) 6 Cal.2d 405, 407 [57 P.2d 1323]; *Olive Proration etc. Com.* v. *Agri. etc. Com.* (1941) 17 Cal.2d 204, 209 [109 P.2d 918].)

[4]We summarily reject Mrs. Gutierrez's contention that she should be permitted to apply for survivor's benefits under the authority of section 31787 (which provides an annual death allowance for the survivors of *nonretired* members). (See § 31780, subds. (a), (b) ["Upon the death before retirement of a member," certain death benefits are payable as provided in several sections, including section "31787"]; and see *Fatemi* v. *Los Angeles County Employees Retirement Assn.* (1994) 21 Cal.App.4th 1797, 1800-1801 [27 Cal.Rptr.2d 105].) Mrs. Gutierrez's petition for a writ of mandate claimed only that she should have been permitted to convert her husband's nonservice-related disability benefits to service-related benefits as

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with directions to enter a new judgment in favor of the Board of Retirement. The Board is entitled to its costs of appeal.

Ortega, Acting P. J., and Masterson, J., concurred.

A petition for a rehearing was denied April 14, 1998, and respondent's petition for review by the Supreme Court was denied July 15, 1998.

---

requested in her letters to LACERA, and she alleged only that the "Board . . . breached its duty to accept [her] application for service-connected survivor benefits." She never applied for the "annual death allowance" provided by section 31787, and she never suggested in her petition that she ought to be permitted to do so. The issue has been waived. (Cf. *Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865, 882-883 [130 Cal.Rptr. 292].)