[No. B219483. Second Dist., Div. Three. Apr. 20, 2011.]

CITY OF FILLMORE, Plaintiff and Respondent, v.
BOARD OF EQUALIZATION, Defendant and Respondent;
CITY OF INDUSTRY et al., Interveners and Appellants.

718

## Counsel

Michele R. Vadon, City Attorney; Burke, Williams & Sorensen, Mark J. Mulkerin and Amy E. Hoyt for Intervener and Appellant City of Industry.

John Pomidor, City Attorney; McDonough Holland & Allen, Benjamin L. Stock, Laura L. Latta; Burke, Williams & Sorensen, Benjamin L. Stock and J. Leah Castella for Intervener and Appellant City of Livermore.

Bewley, Lassleben & Miller, Jeffrey S. Baird and Joseph A. Vinatieri for Plaintiff and Respondent

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, W. Dean Freeman, Felix E. Leatherwood and Stephen Lew, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**CROSKEY, Acting P. J.**—The City of Industry and the City of Livermore appeal a judgment dismissing without prejudice their petition in intervention for a writ of mandate against the state Board of Equalization (SBE). Industry and Livermore sought the reallocation of local sales tax revenues in administrative proceedings before the SBE. The SBE's Allocation Group issued a decision in favor of Industry and Livermore and against the City of Fillmore, and later issued a supplemental decision. After the time to appeal had passed with no appeal, Fillmore sought to appeal the supplemental decision. The Allocation Group decided to refer the matter to the SBE's Appeals Division to consider Fillmore's appeal.

Industry and Livermore petitioned the trial court to compel the SBE to implement the supplemental decision, alleging that the supplemental decision is final and the SBE has no jurisdiction to consider an untimely appeal. The trial court concluded that it could not interfere with the ongoing administrative review proceedings and therefore sustained Fillmore's demurrer to the petition without leave to amend based on the failure to exhaust administrative remedies.

We conclude that Industry and Livermore need not await the completion of the administrative review proceedings before seeking relief in court. After deciding this threshold question, we also conclude that the supplemental decision is final and that Industry and Livermore are entitled to a writ of mandate compelling the SBE to implement the supplemental decision.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Administrative Proceedings

Livermore and Industry filed petitions with the SBE to reallocate local sales tax revenues. They argued that Fillmore and certain retailers had devised a means to divert sales tax revenues away from neighboring cities where the taxable business activities actually occurred by setting up sham offices in Fillmore and claiming that the taxable business activities occurred in Fillmore.

The SBE's Allocation Group issued a decision on August 4, 2008, stating that sales by a particular taxpayer did not occur in Fillmore and that the sales tax revenues allocated to Fillmore for the fourth quarter of 2007 would be reallocated. The decision stated that Fillmore could appeal the decision within 30 days by requesting an appeals conference. The Allocation Group sent a letter to the taxpayer on August 12, 2008, explaining its decision. On August 28, 2008, Fillmore requested a 30-day extension to respond to the decision. The Allocation Group granted the extension as requested.

Fillmore, through its outside counsel, appealed the decision by the Allocation Group and requested an appeals conference in a letter dated September 26, 2008. Fillmore's letter referred to the Allocation Group's letter of August 12, 2008, as a "Supplemental Decision." The Allocation Group stated in a letter dated October 27, 2008, that the matter was being forwarded to the Appeals Division and that an appeals conference would be scheduled. The letter included a summary analysis explaining the decision by the Allocation Group. The Allocation Group sent another letter dated November 10, 2008,

confirming that the matter had been forwarded to the Appeals Division and that an appeals conference would be scheduled. The letter also stated that Fillmore's appeal had not presented any new information that would cause the Allocation Group to change its position.[1]

The SBE notified the parties on or about January 12, 2009, of an appeals conference scheduled for February 17, 2009. Fillmore, through its outside counsel, requested a continuance to early April 2009 in a letter dated January 21, 2009. The SBE notified Fillmore in a letter dated January 30, 2009, that the appeals conference "has been cancelled because it was scheduled prematurely." The letter stated that the dispute had been referred back to the Allocation Group "so it can issue the supplemental decision required by California Code of Regulations, title 18, section 1807, subdivision (b)(7). Petitioner or any notified jurisdiction may thereafter appeal the supplemental decision by filing an objection with the Allocations Group within 30 days of the date of the mailing of the supplemental decision. (Cal. Code Regs., tit. 18, § 1807, subds. (b)(8) & (c)(1).) If a timely objection is submitted, the petition will be forwarded to the Case Management section to schedule a conference."

The Allocation Group issued a supplemental decision on February 11, 2009, granting the petitions for reallocation. The six-page supplemental decision specified the amounts of sales tax revenues to be reallocated from Fillmore to Livermore, Industry, and other cities and explained in greater detail than the prior summary analysis the basis for the decision. The supplemental decision stated that any party objecting to the supplemental decision must submit a written objection within 30 days after the date of the supplemental decision, pursuant to California Code of Regulations, title 18, section 1807, subdivision (b)(8). A cover letter also stated that Fillmore could appeal the supplemental decision within 30 days.

Fillmore, through its outside counsel, requested a 30-day extension to respond to the supplemental decision, in a letter dated March 9, 2009. The Allocation Group granted an extension in a letter dated March 11, 2009, stating that any appeal from the supplemental decision must be filed by April 15, 2009.

Meanwhile, a dispute arose regarding Fillmore's legal representation. The SBE asserted that the private attorneys retained by Fillmore could not represent Fillmore in administrative proceedings before the SBE unless

---

[1] The index to the SBE's reallocation appeal file referred to the letter of November 10, 2008, as a "Second Supplemental Decision."

Fillmore adopted a resolution pursuant to Revenue and Taxation Code section 7056, subdivision (b) certifying that the attorneys were contractually "prohibited . . . from performing consulting services for a retailer during the term of [the] contract" (*ibid.*). Taking the position that the SBE could not disclose confidential taxpayer information to the attorneys absent such a resolution by Fillmore, the SBE corresponded with Fillmore city officials rather than with its attorneys.

Fillmore and its attorneys failed to appeal the supplemental decision by the deadline of April 15, 2009. Accordingly, the Allocation Group stated in a letter to Fillmore's Director of Finance dated April 28, 2009, that the supplemental decision had become final: "We did not receive an appeal of our February 11, 2009, Supplemental Allocation Group Decision by the date specified, April 15, 2009, in our letter granting your request for an extension. We now consider under Regulation 1807(b)(8) our proposed allocations as estimated in our Supplement Decision to be final. Accordingly, we will process the reallocation of local tax for the fourth quarter 2007 in the amount of $1,246,678."

Fillmore, through its outside counsel, protested in a letter dated May 1, 2009, stating, "Fillmore has a pending appeal of the reallocations for which a hearing has been promised but never granted." Fillmore argued that the SBE could not "summarily deny" its purported appeal by declaring the supplemental decision to be final. Fillmore filed a formal objection to the supplemental decision on May 7, 2009, and requested an appeals conference.

The Allocation Group referred the matter to the SBE's Appeals Division on May 19, 2009, noting the existence of a dispute as to the finality of the supplemental decision. The SBE notified the parties on or about July 2, 2009, of an appeals conference scheduled for August 27, 2009.

### 2. Trial Court Proceedings

Fillmore filed a petition in the trial court in May 2009, seeking a writ of mandate compelling the SBE to allow Fillmore to be represented by its legal counsel of choice in the reallocation proceedings. Industry and Livermore applied for and were granted leave to intervene in the mandamus proceedings, and filed a petition in intervention in June 2009.[2] Industry and Livermore allege that the supplemental decision is final and that the SBE has no

---

[2] Industry and Livermore commenced a separate action by filing a complaint against Fillmore and others in April 2009, seeking damages, restitution, and declaratory and injunctive relief (*City of Industry v. City of Fillmore* (Super. Ct. L.A. County, 2009, No. BC411865)). The trial court in that action granted a special motion to strike and sustained demurrers to several counts against Fillmore without leave to amend and dismissed the complaint against Fillmore.

jurisdiction to conduct an appeals conference for the purpose of reconsidering its final decision. They seek a writ of mandate compelling the SBE to implement its supplemental decision by reallocating the tax proceeds for the fourth quarter of 2007 and all of 2008, a declaration that the supplemental decision is final and that the SBE has exhausted its jurisdiction, and an injunction prohibiting the SBE from conducting an appeals conference.

Industry and Livermore jointly filed an opening brief in support of their petition in intervention. SBE filed only a "preliminary response" arguing that the supplemental decision was not final because the administrative appeal to the Appeals Division was still pending. Fillmore filed an opposition to the opening brief, arguing that the supplemental decision was not final and that Industry and Livermore were not entitled to a writ of mandate in any event.

After a hearing on both Fillmore's petition and the petition in intervention, the trial court concluded that the parties had failed to exhaust their administrative remedies and dismissed the petitions without prejudice. The court stated in a minute order:

"Industry and Livermore ask the court to insert itself into the administrative procedure at this point and command the SBE to refrain from further processing Fillmore's administrative appeals because Fillmore didn't request an appeal promptly.

". . . Until the administrative procedure has been invoked and completed, there is nothing for this court to review; it cannot interfere in the intermediate stages of the administrative proceeding."

The trial court entered a judgment in August 2009 dismissing without prejudice both Fillmore's petition and the petition in intervention filed by Industry and Livermore. Industry and Livermore timely appealed the judgment.

### 3. Subsequent Events

The SBE's Appeals Division conducted a hearing on the reallocation dispute in August 2009. It issued its decision and recommendation on November 29, 2010, finding among other things that Fillmore's objection to the supplemental decision was untimely and that the supplemental decision therefore became final on April 15, 2009, as to tax reallocations for the period

---

Industry and Livermore appealed, and their appeal is currently pending in this court (*City of Industry v. City of Fillmore* (B219485, app. pending)).

from October 1, 2007, to December 31, 2008. Fillmore has appealed the Appeals Division's decision to the SBE's board members.

## CONTENTIONS

Industry and Livermore contend (1) the undisputed facts establish that Fillmore failed to timely appeal the supplemental decision, so the decision is final and the SBE has no jurisdiction to reconsider the decision and (2) they are entitled to a writ of mandate compelling the SBE to implement the supplemental decision.

## DISCUSSION

Industry and Livermore contend the supplemental decision is final and the SBE therefore has no jurisdiction to consider Fillmore's untimely administrative appeal. The finality of the supplemental decision was a question before the Appeals Division at the time of the trial court's decision, and that same question is now under consideration in the pending administrative appeal from the Appeals Division's decision. Before we can decide the merits of this question, we first must decide who decides whether the supplemental decision is final. Should the trial court, and this court, decline to decide whether the supplemental decision is final because that question is under consideration in the SBE administrative review proceedings, or should we decide that question notwithstanding the pending administrative appeal?

1. *Industry and Livermore Need Not Await the Completion of the Pending Administrative Review Proceedings Before Seeking Relief in Court*

■ A party seeking relief for an injury for which an administrative remedy is available ordinarily must pursue relief from the administrative agency before seeking relief in court. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 [25 Cal.Rptr.3d 320, 106 P.3d 976]; *Richards v. Department of Alcoholic Beverage Control* (2006) 139 Cal.App.4th 304, 315–316 [42 Cal.Rptr.3d 782].) Moreover, a party aggrieved by an administrative decision must exhaust any available, nonduplicative administrative review procedures before challenging the decision in court. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 [29 Cal.Rptr.3d 234, 112 P.3d 623] (*Coachella Valley*); *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942] (*Abelleira*).) The exhaustion of administrative remedies doctrine encompasses both of these requirements. (See *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 930 [16 Cal.Rptr.3d 849,

94 P.3d 1055]; *California Aviation Council v. County of Amador* (1988) 200 Cal.App.3d 337, 341 [246 Cal.Rptr. 110].)

■ The exhaustion doctrine " 'precludes [judicial] review of an intermediate or interlocutory action of an administrative agency.' " (*Coachella Valley, supra*, 35 Cal.4th at p. 1081.) A court may review only a decision by the final administrative decision maker. (*Abelleira, supra*, 17 Cal.2d at p. 291 ["Until that administrative procedure has been invoked and completed, there is nothing that the District Court of Appeal or any other court may review; it cannot interfere in the intermediate stages of the proceeding."]; *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 284–285 [54 Cal.Rptr.3d 116].) Accordingly, if no party seeks administrative review of an intermediate administrative decision, the decision becomes final and will not be disturbed by the courts. If administrative review proceedings are initiated, however, a court may neither review nor enforce the administrative decision until after the administrative review proceedings are completed. (*Abelleira, supra*, 17 Cal.2d at pp. 291–292.)

The exhaustion requirement (1) promotes judicial economy by affording the administrative agency an opportunity to provide the relief requested in whole or in part, so as to avoid costly litigation or reduce the scope of litigation; (2) recognizes the expertise of the agency's quasi-judicial tribunal; and (3) facilitates the development of a complete factual record, which can assist later judicial review. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543]; *Westlake Community Hosp. v Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].)

■ There are exceptions to the exhaustion requirement, including an exception where the agency's authority to act, or jurisdiction, is disputed. "[E]xhaustion of administrative remedies may be excused when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.' [Citations.]" (*Coachella Valley, supra*, 35 Cal.4th at pp. 1081–1082.) Thus, a party may seek relief in court without exhausting its administrative remedies or despite ongoing administrative proceedings in some circumstances if the agency's jurisdiction to resolve the dispute is disputed.

*Coachella Valley* set forth three factors that a court must consider in determining whether to decide a question of the agency's jurisdiction to resolve the underlying dispute before the agency proceedings have run their course: "[(1)] the injury or burden that exhaustion will impose, [(2)] the strength of the legal argument that the agency lacks jurisdiction, and [(3)] the

extent to which administrative expertise may aid in resolving the jurisdictional issue. [Citation.]" (*Coachella Valley, supra*, 35 Cal.4th at p. 1082.)

*Coachella Valley* involved an unfair labor practice charge made to California's Public Employment Relations Board (PERB) under the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.). Acting on the charge, the PERB issued an administrative complaint against an employer. The employer moved to dismiss the complaint on the grounds that the PERB lacked jurisdiction over the alleged violations because the charge was untimely, but the motion was denied. (*Coachella Valley, supra*, 35 Cal.4th at p. 1078.) The employer filed a petition for writs of mandate and prohibition in the superior court, alleging that the PERB had no jurisdiction to issue the complaint. The PERB and the party that had made the charge argued in opposition that because the ongoing administrative proceedings were not concluded, the employer had failed to exhaust its administrative remedies. The trial court concluded that the employer was not required to exhaust its administrative remedies. (*Id.* at pp. 1078–1079.) The trial court therefore addressed the merits of the jurisdictional question as to the timeliness of the administrative complaint. (*Id.* at p. 1079.)

The California Supreme Court stated that the main issue was whether the limitations period for making an unfair labor practice charge to the PERB under the Meyers-Milias-Brown Act was three years or six months. (*Coachella Valley, supra*, 35 Cal.4th at p. 1077.) But first, the Supreme Court considered whether the employer was required to exhaust its administrative remedies by defending itself in the pending administrative proceedings before seeking relief in court. *Coachella Valley* stated that the question of the applicable limitations period "implicates the PERB's administrative authority or jurisdiction." (*Id.* at p. 1082.) The Supreme Court set forth the three-part test described above, concluded that all of the three factors weighed in favor of excusing the exhaustion requirement, and held that the employer's failure to exhaust its administrative remedies was excused. (*Id.* at pp. 1082–1083.) The Supreme Court then addressed the merits of the jurisdictional question concerning the applicable limitations period and concluded that the limitations period was six months. (*Id.* at pp. 1083–1091.)

The three-part test involves a balancing of interests and provides a guide to the exercise of judicial discretion. (See 2 Pierce, Administrative Law Treatise (5th ed. 2010) § 15.2, pp. 1226–1227.)[3] When all three factors weigh in favor

[3] "Because each of the three factors is a variable, a court does not escape from exercising its discretion when it uses the three factors; the three factors are no more than a guide for structuring judicial discretion. When all three factors pull in the same direction, deciding the exhaustion question should be easy. If injury from pursuing the administrative remedy is considerable, if the agency probably lacks jurisdiction, and if resolving the question of

of excusing the exhaustion requirement, as in *Coachella Valley, supra*, 35 Cal.4th 1072, and in *Security National Guaranty, Inc. v. California Coastal Com.* (2008) 159 Cal.App.4th 402, 416–417 [71 Cal.Rptr.3d 522], the answer should be easy. When the three factors point in different directions, however, the answer can be more difficult. (See fn. 3, *ante*; see also *California-Nevada Annual Conference etc. v. City and County of San Francisco* (2009) 173 Cal.App.4th 1559, 1570–1571 [94 Cal.Rptr.3d 64].)

The trial court here declined to decide whether Fillmore's appeal from the supplemental decision was timely because the court concluded that Industry and Livermore must await the completion of the administrative review proceedings before seeking relief in court. If Fillmore's administrative appeal from the supplemental decision was untimely, however, the SBE has no jurisdiction to consider the administrative appeal. (*Olive Proration etc. Com. v. Agri. etc. Com.* (1941) 17 Cal.2d 204, 209 [109 P.2d 918] (*Olive Proration*); *Humbert v. Castro Valley County Fire Protection Dist.* (1963) 214 Cal.App.2d 1, 8–10 [29 Cal.Rptr. 158] (*Humbert*).[4]) The three-part test in *Coachella Valley, supra*, 35 Cal.4th 1072, provides a means for a court to decide whether to excuse the exhaustion requirement so the court can decide such a jurisdictional question before the administrative review proceedings have run their course. We conclude that it is appropriate to apply the three-part test in *Coachella Valley* in these circumstances.

■ The first factor to consider is the injury or burden that exhaustion would impose. (*Coachella Valley, supra*, 35 Cal.4th at p. 1082.) Industry and Livermore argue that the administrative review proceedings will result in considerable delay and loss of interest on the reallocated funds. Absent any regulation requiring a final decision by the SBE by a particular date, Industry and Livermore argue that the delay and loss of interest are indefinite. The ordinary delay and cost of pursuing an administrative remedy does not constitute an injury or burden for purposes of the three-part test. (*Coachella Valley, supra*, 35 Cal.4th at p. 1082.) We need not decide whether Industry and Livermore have established a cognizable injury, however, because we conclude that the second and third factors alone justify excusing the exhaustion requirement in these circumstances.

jurisdiction does not implicate the agency's specialized understanding, exhaustion should not be required. If pursuit of the administrative remedy causes no injury except the cost of the proceeding, the question of administrative jurisdiction is difficult, and the agency's expertise may contribute significantly to resolving the question of jurisdiction, exhaustion should be required. Of course, when the three factors pull against each other, more judicial discretion is required for resolving the exhaustion question." (2 Pierce, Administrative Law Treatise, *supra*, § 15.2, pp. 1226–1227.)

[4] *Humbert, supra*, 214 Cal.App.2d at pages 9–10, stated, "As the board had lost jurisdiction to grant plaintiff an appeal, it, likewise, had no power to waive plaintiff's failure to appeal."

The second factor is the strength of the legal argument that the agency lacks jurisdiction. (*Coachella Valley, supra,* 35 Cal.4th at p. 1082.) In our view, the argument that the supplemental decision is final because of the absence of a timely administrative appeal and that the SBE lacks jurisdiction to reconsider the decision is strong, as we discuss below. The SBE's regulations and the unequivocal statements by both the Allocation Group and the Appeals Division that the supplemental decision became final strongly suggest that the decision is final. The second factor therefore weighs in favor of excusing the exhaustion requirement.

The third factor is the extent to which administrative expertise may assist in resolving the jurisdictional issue. (*Coachella Valley, supra,* 35 Cal.4th at p. 1082.) We believe that judicial intervention at this time would not deprive us of the benefit of the SBE's administrative expertise. The interpretation of administrative regulations and application of those regulations to the undisputed facts are purely legal questions. (*Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) Although an agency's interpretation of its own regulations ordinarily is entitled to some deference, the provision here at issue concerning the time to appeal a supplemental decision does not implicate the SBE's expertise or technical knowledge, so the SBE's interpretation of the regulation is entitled to little, if any, deference. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 859 [40 Cal.Rptr.3d 653].) Such a legal question is within the expertise of courts. Moreover, we have the benefit of the Appeals Division's considered opinion on this issue. (See *Coachella Valley, supra,* 35 Cal.4th at p. 1083; see also 2 Pierce, Administrative Law Treatise, *supra,* § 15.2 at p. 1229.[5]) Thus, the third factor therefore also weighs in favor of excusing the exhaustion requirement.

Considering the three factors, we conclude that, on balance, the strength of the argument that the supplemental decision has become final and thus the SBE has no jurisdiction to reconsider the decision, together with the fact that the jurisdictional question does not present any issue within the administrative expertise of the SBE, justifies excusing the exhaustion requirement. Industry and Livermore therefore are excused from exhausting their administrative remedies, need not await the completion of the administrative review proceedings, and instead may seek a judicial decision as to whether the supplemental decision is final. We now will proceed to address that question.

---

[5] Pierce, Administrative Law Treatise, *supra,* section 15.2, page 1229, recommends as a fourth factor, in addition to those stated above, "the extent to which the agency has already completed its factfinding or applied its expertise."

## 2. *The Supplemental Decision Is Final*

### a. *Applicable Regulations*

■ California Code of Regulations, title 18, section 1807 (section 1807) governs the administrative review of petitions for reallocation. Section 1807 provides for a written decision by the Allocation Group stating the basis for its decision. (*Id.*, subd. (b)(2).) The petitioner or any notified jurisdiction may appeal the decision by submitting a written objection to the Allocation Group within 30 days after the mailing of the decision, or within the period of any extension granted by the Allocation Group. (*Id.*, subd. (b)(4)–(6).) "If no such timely objection is submitted, the decision of the Allocation Group is final as to the petitioner and all notified jurisdictions." (*Id.*, subd. (b)(6).)

■ If a timely objection is submitted, the Allocation Group must consider the objection and issue a supplemental decision ruling on the objection and stating the basis for its ruling. (§ 1807, subd. (b)(7).) The petitioner or any notified jurisdiction may appeal the supplemental decision by submitting a written objection to the Allocation Group within 30 days after the mailing of the supplemental decision, or within the period of time of any extension granted by the Allocation Group. (*Id.*, subd. (b)(8).) "Such an objection must state the basis for the objecting jurisdiction's disagreement with the supplemental decision and include all additional information in its possession that supports its position." (*Id.*, subd. (c)(1).) *"If no such timely objection is submitted, the supplemental decision of the Allocation Group is final as to the petitioner and all notified jurisdictions."*[6] (*Id.*, subd. (b)(8), italics added.)

■ A timely objection from a supplemental decision is forwarded to the Appeals Division, which conducts an appeals conference and issues a written decision and recommendation. (§ 1807, subd. (c)(2)–(4).) The petitioner or any notified jurisdiction may request a reconsideration of the decision and recommendation by the Appeals Division and may appeal the decision and recommendation by requesting a hearing before the SBE's board members. (*Id.*, subd. (c)(5) & (6).) A decision by the SBE's board members is a final administrative decision. (*Id.*, subd. (d)(5).)

---

[6] These provisions governing administrative appeals became effective on September 10, 2008, replacing the prior provisions. Thus, these provisions were not in effect as of the date of the initial decision by the Allocation Group on August 4, 2008, but were in effect when Fillmore appealed that decision on September 26, 2008, and thereafter.

b. *Fillmore Failed to Submit a Timely Written Objection to the Supplemental Decision, so the Supplemental Decision Is Final*

The Allocation Group issued and mailed its decision on August 4, 2008, and later granted Fillmore a 30-day extension to appeal the decision, until October 3, 2008. Fillmore timely appealed the decision by submitting a written objection to the decision on September 26, 2008. The Allocation Group then notified the parties that the matter was being forwarded to the Appeals Division for an appeals conference, but the SBE notified the parties in a letter dated January 30, 2009, that the appeals conference had been "scheduled prematurely" and that the matter had been referred back to the Allocation Group "so it can issue the supplemental decision required by . . . section 1807, subdivision (b)(7)." The letter also notified the parties of their right to appeal the supplemental decision pursuant to section 1807, subdivisions (b)(8) and (c)(1).

The Allocation Group issued and mailed its supplemental decision on February 11, 2009. The supplemental decision and a cover letter expressly stated that any party wishing to appeal the supplemental decision must submit a written objection to the supplemental decision within 30 days after the date of the supplemental decision, pursuant to section 1807, subdivision (b)(8). Fillmore requested a 30-day extension to respond to the supplemental decision, and the Allocation Group granted an extension until April 15, 2009. After that date had passed without the submission of any written objection, the Allocation Group notified Fillmore that the supplemental decision had become final. Fillmore protested and later filed its written objections to the supplemental decision on May 7, 2009, for the first time.

These facts are undisputed and compel the conclusion that Fillmore failed to timely appeal the supplemental decision.

Fillmore argues that it timely appealed what it characterizes as the first supplemental decision of August 12, 2008, in its letter of September 26, 2008, and because section 1807 provides for no more than two supplemental decisions, Fillmore cannot be required to appeal a third supplemental decision.[7] Fillmore also argues that after notifying the parties that the matter had been forwarded to the Appeals Division for an appeals conference, the SBE had no authority to refer the matter back to the Allocation Group, so the supplemental decision of February 11, 2009, is of no effect. We disagree. The letter of August 12, 2008, was addressed to the taxpayer, was not addressed

---

[7] Fillmore notes that the SBE's reallocation appeals file index referred to the Allocation Group's letter of November 10, 2008, as a "Second Supplemental Decision."

to Fillmore, and did not state that it was a supplemental decision. Fillmore's letter of September 26, 2008, constituted an appeal of the Allocation Group's decision of August 4, 2008, pursuant to section 1807, subdivision (b)(6). Such an appeal results in a supplemental decision by the Allocation Group, pursuant to section 1807, subdivision (b)(7).

Section 1807 provides that a matter will be forwarded to the Appeals Division only after the Allocation Group issues a supplemental decision and an interested party timely appeals the supplemental decision. (*Id.*, subds. (b)(8) & (c)(1), (2).) As of late 2008, any appeals conference was premature absent a supplemental decision and a timely appeal. The SBE explained this in its letter of January 30, 2009, and properly corrected the error. The SBE notified Fillmore in that letter, in the supplemental decision of February 11, 2009, and in subsequent correspondence that any party objecting to the supplemental decision must file a timely appeal. Fillmore failed to do so.

As a result of the failure to timely appeal the supplemental decision, the supplemental decision became final as to these parties as to the matters encompassed in and time periods governed by the supplemental decision.[8] (§ 1807, subd. (b)(8).) Moreover, Fillmore's failure to exhaust its administrative remedies by timely seeking administrative review of the supplemental decision precludes judicial review of the supplemental decision. (*Coachella Valley, supra*, 35 Cal.4th at p. 1081.)

■ An administrative agency has no inherent authority to reconsider a final administrative decision. (*Heap v. City of Los Angeles* (1936) 6 Cal.2d 405, 407 [57 P.2d 1323] (*Heap*); *Olive Proration, supra*, 17 Cal.2d at p. 209; *Humbert, supra*, 214 Cal.App.2d at pp. 8–10; *Gutierrez v. Board of Retirement* (1998) 62 Cal.App.4th 745, 749, fn. 3 [72 Cal.Rptr.2d 837] (*Gutierrez*).)

In *Heap, supra*, 6 Cal.2d 405, a city employee applied to a civil service commission to review his discharge. The commission issued an order sustaining his discharge, but later vacated its order and restored his employment. (*Id.* at p. 406.) The city charter provided that an order by the commission on such an application determining whether there were grounds for discharge was " 'final and conclusive.' " (*Id.* at p. 407.) The California Supreme Court held that the decision by the commission sustaining the discharge was final and conclusive and that, absent express authorization in the city charter to reconsider such a decision, the commission had no jurisdiction to reconsider its decision. (*Id.* at p. 407.) *Heap* rejected the argument that the commission had the inherent power to reconsider its own decision, stating, " 'It had no

---

[8] We express no opinion with respect to any tax reallocation disputes relating to time periods other than those governed by the supplemental decision.

jurisdiction to retry the question and make a different finding at a later time. The charter gives no such grant of power, and it may not be implied.' " (*Ibid.*)

*Heap* stated further: "But the rule stated above, that a civil service commission has no such power in the absence of express authorization, is sound and practical. If the power were admitted, what procedure would govern its exercise? Within what time would it have to be exercised; how many times could it be exercised? Could a subsequent commission reopen and reconsider an order of a prior commission? And if the commission could reconsider an order sustaining a discharge, could it reconsider an order having the opposite effect, thus retroactively holding a person unfit for his position? These and many other possible questions which might be raised demonstrate how unsafe and impracticable would be the view that a commission might upset its final orders at its pleasure, without limitations of time, or methods of procedure." (*Heap, supra*, 6 Cal.2d at pp. 407–408.)

*Olive Proration, supra*, 17 Cal.2d 204, involved a statutory procedure for a decision by a commission on a petition to terminate a program for the prorated marketing of olives. The commission issued an order finding that a petition was not signed by the required number of olive producers and denied the petition. The commission later rescinded its order and granted the petition. (*Id.* at pp. 206–207.) The California Supreme Court held that absent statutory authority for the commission to change its decision, the commission had no power to do so. (*Id.* at p. 209.) *Olive Proration* quoted from the same language in *Heap, supra*, 6 Cal.2d 405, quoted above. (*Olive Proration, supra*, 17 Cal.2d at pp. 209–210.)

*Humbert, supra*, 214 Cal.App.2d 1, involved an untimely administrative appeal from an intermediate administrative decision, as here. *Humbert* held that an employee failed to exhaust his administrative remedies by failing to timely appeal his discharge by the board of fire commissioners. (*Id.* at p. 6.) *Humbert* stated further that the discharge decision became final after 10 days in accordance with the commission's own rules, and that the board's later decision to reconsider and affirm the discharge could not waive the requirement of a timely appeal. (*Id.* at p. 8.) *Humbert* concluded that absent an express provision for reconsidering a discharge in some manner other than a timely appeal, the board had no jurisdiction to reconsider its decision or waive the appeal requirement. (*Id.* at pp. 8–10.)

The principle that an administrative agency has no inherent authority to reconsider a final administrative decision and that any authority to reconsider such a decision must be expressly stated was applied more recently in *Gutierrez, supra*, 62 Cal.App.4th 745. In *Gutierrez*, a county

employee applied for and received non-service-connected disability retirement benefits. His widow later applied for service-connected disability survivor benefits. The agency denied her application. The trial court granted the widow's application for a writ of mandate to compel the agency to consider her application. (*Id.* at p. 747.) The Court of Appeal reversed, holding that absent statutory authority for a survivor to apply for disability benefits different from those selected by the decedent, the agency had no authority to consider such an application. (*Id.* at pp. 748–749.) *Gutierrez* stated further, "Unless authorized by statute, an administrative agency acting in an adjudicatory capacity . . . may not in any event reconsider or reopen a decision. (*Heap* v. *City of Los Angeles*[, *supra,*] 6 Cal.2d 405, 407 . . . ; *Olive Proration etc. Com.* v. *Agri. etc. Com.*[, *supra,*] 17 Cal.2d 204, 209 . . . .)" (*Id.* at p. 749, fn. 3.)

We conclude in accordance with these authorities that absent a statute or regulation expressly authorizing the SBE to reopen and reconsider the supplemental decision in these circumstances, the SBE has no jurisdiction to do so.

### 3. *Industry and Livermore Are Entitled to a Writ of Mandate*

A court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty. (Code Civ. Proc., § 1085; *City of Dinuba* v. *County of Tulare* (2007) 41 Cal.4th 859, 868 [62 Cal.Rptr.3d 614, 161 P.3d 1168].) A writ of mandate is available only if the respondent has a clear, present, and usually ministerial duty and the petitioner has a clear, present, and beneficial interest in the performance of that duty. (*Ibid.*) A ministerial duty is an act that must be performed in a prescribed manner without the exercise of discretion or judgment. (*Kavanaugh* v. *West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

The reallocation and payment of tax revenues in accordance with the supplemental decision involves no exercise of judgment or discretion and is a ministerial act. Absent a timely appeal, the SBE exhausted its discretion in rendering the supplemental decision, which is now final. The SBE's duty to comply with the supplemental decision is a ministerial duty. (Cf. *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344–345 [124 Cal.Rptr. 513, 540 P.2d 609].) Moreover, Industry and Livermore have a clear, present, and beneficial interest in the reallocation of tax revenues in accordance with the supplemental decision. We therefore conclude that Industry and Livermore are entitled to a writ of mandate compelling the SBE to implement the supplemental decision.

## *DISPOSITION*

The judgment is reversed with directions to the trial court to grant the petition in intervention by Industry and Livermore for a writ of mandate and issue a writ of mandate compelling the SBE to implement its supplemental decision. Industry and Livermore shall recover their costs on appeal.

Kitching, J., and Aldrich, J., concurred.