Filed 9/19/13  Lawrence v. City of West Hollywood CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TONI LAWRENCE, | B243823 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC115655) |
| v. | |
| CITY OF WEST HOLLYWOOD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa Hart Cole, Judge.  Affirmed.

Law Offices of Rosario Perry and Rosario Perry for Plaintiff and Appellant.

Michael Jenkins, City Attorney; Jenkins & Hogin, Christi Hogin and Gregg Kovacevich for Defendant and Respondent.

_____

In July 2008, plaintiff and appellant Toni Lawrence (Lawrence) rented a West Hollywood apartment to real parties in interest Charles Gant and Sonya Burtnett (Gant and Burtnett). In June 2011, Lawrence informed Gant and Burtnett that they owed her $42,194 in back rent, leading Gant and Burtnett to file a Maximum Allowable Rent (MAR) request with defendant and respondent, the City of West Hollywood (City). After an administrative hearing in August 2011, the hearing examiner found the MAR to be $724.70, not $1,995 as claimed by Lawrence. Lawrence appealed to the Rent Stabilization Commission (RSC) which affirmed the hearing examiner's decision. Lawrence filed a petition for a writ of mandate in Superior Court to invalidate the RSC's decision. The petition was denied and Lawrence appeals.

We affirm.

FACTUAL & PROCEDURAL BACKGROUND

*West Hollywood's Rent Stabilization Ordinance*

The City enacted its Rent Stabilization Ordinance (RSO) within Title 17 of the West Hollywood Municipal Code (WHMC) in response to a critical shortage of rental housing. The City attempted to maintain a balance in protecting tenants without infringing substantially upon the rights of landlords to receive a reasonable return. (WHMC § 17.04.020.) The RSO aims to direct the maximum allowable rent a landlord may charge a tenant and the circumstances under which that rent may be subsequently increased. Section 17.40.020(1) of the WHMC allows a landlord to determine the initial rent a new tenant pays in most circumstances. There are four exceptions to the general rule that a landlord may not charge a new tenant more than the previous one, within WHMC section 17.40.020(2). Section 17.40.020(2)(c) of the WHMC, at issue here, prevents upward rent adjustments where the previous vacancy was not voluntary, instead caused by the landlord's harassing conduct, attempts at constructive eviction, or because of a breach of the covenant of quiet enjoyment of the property. The various types of tenant harassment are laid out within the RSO and include enticing a tenant to vacate the property through intentional misrepresentation or the concealment of a material fact.

2

(WHMC § 17.52.090.)  Under RSO 17.40.020(2)(d), a unit is not eligible for a market rate rental increase if the prior tenant occupied the unit for less than six months and principally for the purpose of establishing eligibility for a vacancy rent increase (a sham tenancy).

The RSC is empowered to make an initial determination as to whether the vacancy was voluntary or encouraged, using information received by the Department of Rent Stabilization and Housing.  The landlord may file an administrative appeal. (WHMC § 17.40.020(2)(c).)

*The Costa-Hawkins Act and the RSO*

California Constitution, article XI, section 7 states that a county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations which do not conflict with general laws.  As such, the City is permitted to make laws which are not inconsistent with or contradict state-wide California laws. Government Code section 50022.2 authorizes any local agency to enact any ordinance which adopts any code by reference.

Civil Code sections 1954.50–1954.535 encompass the Costa-Hawkins Rental Housing Act (Costa-Hawkins), which serves the same goals as the City's RSO. However, Costa-Hawkins and the RSO differ slightly.  Under Costa-Hawkins, Civil Code section 1954.53, subdivision (a) provides that an owner of residential real property may establish the initial rental rate for a dwelling or unit, except where any of the following applies: (1) the previous tenancy has been terminated by the owner by notice pursuant to Civil Code section 1946.1; (2) the previous tenancy has been terminated upon a change in the terms of the tenancy pursuant to Civil Code section 827; (3) the owner has terminated or not renewed a contract or recorded agreement with a governmental agency that provides for a rent limitation to a qualified tenant; or (4) the dwelling or unit has a health, fire, or safety citation from the appropriate governmental agency that went uncorrected for at least 60 days prior to the vacancy.  (Civ. Code, § 1954.53, subds. (a)(1) and (f).)

3

The RSO contains these four exceptions, as well as two additional exceptions, within RSO section 17.40.020, subdivisions (2)(c) and (2)(d). These state that a landlord is not entitled to set an initial rental rate on a unit if (1) the vacancy on which the rent adjustment is based was not a voluntary vacancy, because it resulted from conduct of the landlord or the landlord's agent which constituted harassment prohibited by law, constructive eviction or a breach of the covenant of quiet enjoyment of the property; and (2) the prior tenant did not have a bona fide landlord-tenant relationship with the property owner or occupied the property for less than six months and principally for the purpose of vacating the property to establish eligibility for a vacancy rent increase under this title.

However, Costa-Hawkins includes Civil Code section 1954.53, subdivision (e) which provides that "Nothing in this section shall be construed to affect any authority of a public entity that may otherwise exist to regulate or monitor the grounds for eviction."

*The First Two Tenants*

Lawrence rented out the apartment at 918 N. San Vicente (the Apartment) at a rate of $715 per month over a period from 2005 until 2008, with only one tenant, Cutler, residing there during this time. In June 2008, Lawrence paid Cutler $9,700 to leave the Apartment. She and Cutler executed a Settlement Agreement which provided, inter alia, that "Lawrence desires that Cutler vacate the premises"; that "Cutler desires to have the time to move and be reimbursed for expenses of the move"; that Lawrence agrees to pay Cutler $9,700 within 15 days after Cutler executes the Settlement Agreement; and that the security deposit will be returned after an inspection of the Apartment. The Settlement Agreement also provided that should Cutler fail to vacate the Apartment, Lawrence was entitled to evict him and he would be liable for daily rental and attorneys fees and costs associated with the eviction. Cutler moved out in May 2008 and Lawrence rented the Apartment to Jeff Hadst, at the same rate. Hadst left shortly thereafter and Lawrence sought out new tenants. On July 14, 2008, Gant and Burtnett signed a lease agreement for the Apartment. The lease period was for one year, from August 1, 2008 until July 31, 2009, and provided for a monthly rental of $1,995.

4

During this period the maximum allowable rent for the Apartment remained registered with the City at $715.

*Charles Gant and Sonya Burtnett's Tenancy*

Once Gant and Burtnett moved into the Apartment, Lawrence attempted to re-register the rental rate with the City at $1,995. As required, Lawrence filed a Unit Re-Registration After Vacancy form with the City on July 16, 2008, notifying it of the higher rent.

The City responded on July 24 with a letter to Lawrence, denying the new rental rate. According to the City, the original March 2008 vacancy was induced under RSO section 17.52.090(5) because Lawrence required the tenant Cutler to sign an agreement to leave the Apartment. The City found that the Settlement Agreement induced Cutler to leave under the circumstances described in section 17.52.090 (5) of the RSO, that is "Enticing a tenant to vacate a rental housing unit through an intentional misrepresentation(s) or the concealment of a material fact. The City concluded that because Cutler had been asked to leave and Hadst lived at the Apartment for less than two months, it was a sham tenancy and thus the Apartment was not eligible for a market rate rental increase pursuant to RSO section 17.40.020(2)(d). Therefore the City held that Gant and Burtnett should not pay above $717.75. In a subsequent letter, dated August 26, 2008, the City amended the amount to $715.75.

Each letter informed Lawrence of her right to appeal within ten business days, if the decision was based on false or misleading information. Lawrence did not appeal. In an August 2008 e-mail to Gant and Burtnett, Lawrence acknowledged: "I got a letter from rent control which questioned the two month occupancy and since the two of you were happy with the apartment, I did not take it any further." She also acknowledged that on the advice of her attorney she brought in Hadst, the short-term renter, primarily so he could live there and pay the original, rent-controlled rate. Lawrence believed that after two months, when Hadst left on his own free will, she could subsequently charge any new tenants more than the rent-controlled rate, hoping to receive the going market rate

5

for the Apartment. On August 17, 2008, Lawrence re-filed the Unit Re-Registration After Vacancy form setting the rent at the approved rate of $715.75.

*Demand for Additional Rent*

Lawrence renewed the lease with Gant and Burtnett from 2008 until 2011 and they paid the monthly rent of $715.75 with only minor increases every year as allowed by the City. On June 22, 2011, however, Gant and Burtnett received a letter sent from an attorney on Lawrence's behalf which ordered them to pay $42,194 in back rent.[1] The letter claimed that the City had invalidly determined the rental rate for the Apartment, in violation of Civil Code sections 1954.53 et.seq.

In response, Gant and Burtnett filed a MAR form with the City. The matter was set for a hearing on August 5, 2011.

*Administrative Hearing*

At the August 5, 2011 administrative hearing, Burnett, Gant and Lawrence testified. Lawrence testified that she had asked Cutler to leave because he was selling marijuana out of the Apartment. She claimed she never forced him out. Hadst moved out so quickly because of the construction next door.

The examiner concluded that the City made a valid decision in 2008 when it determined the legal rent was $715.75 She found that the first tenant, Cutler, was induced to leave, and the second tenant, Hadst, failed to occupy the Apartment long enough to permit an increase of the rental rate of the unit to the market rate, under RSO sections 17.52.090(5) and 17.40.020(2)(c). The hearing examiner did not consider evidence offered to prove or disprove the City's 2008 determination. Finally, the examiner found that Lawrence had actual notice of her right to appeal and understood this right, as she acknowledged it in the August 2008 e-mail to Burtnett. Since Lawrence

---

[1] This figure was calculated as the difference between $1,995 and $754 times 34 months.

6

failed to exercised this right, the City's determination was final and the MAR was $724.70.[2]

Lawrence appealed the August 5, 2011 administrative hearing decision to the RSC on September 20, 2011. She argued (1) the RSO violated Costa-Hawkins; (2) the hearing officer relied on documents not part of the hearing itself, thus depriving Lawrence of procedural and substantive due process; and (3) the hearing officer was not qualified to hear the matter, thus depriving Lawrence of procedural and substantive due process. The matter was heard on October 27, 2011, before the RSC, which affirmed the hearing examiner's decision. It found that the 2008 decision of the Department of Rent Stabilization and Housing occurred in the normal course of business and was final, as it was not appealed.

*Petition for Writ of Mandate*

On January 20, 2012, Lawrence petitioned the superior court for a writ of administrative mandamus directing the City to reverse the RSC's decision. The court heard argument on the petition on July 27, 2012.

During the hearing, Lawrence stressed her belief that the City's local law was preempted by Costa-Hawkins, and as a result the City's MAR decision could not stand. Lawrence argued that Costa-Hawkins may give the City the power to monitor tenant evictions, but it stops short of allowing the City to regulate rents after vacancies. In response, the trial court asked Lawrence how to reconcile Civil Code section 1954.53, subdivision (e) with her argument. Lawrence interpreted Civil Code section 1954.53, subdivision (e) as restrictive, finding it did not permit local ordinances to regulate the rents an owner may set after a vacancy. Lawrence argued that Costa-Hawkins permitted four exclusive exceptions, and because the eviction here did not fall within any of these scenarios, the doctrine of preemption prevented the City from creating any additional

---

[2] She came to this number via the 2008 MAR, amended to include appropriate annual general adjustments allowed by the City.

7

exceptions to regulate the rate set by Lawrence or any other after-vacancy rental rates. Furthermore, Lawrence challenged the 2011 MAR.

The City presented a different interpretation of Civil Code section 1954.53, subdivision (e), analyzing it from a policy perspective. It argued if Costa-Hawkins does not permit the regulation of after vacancy rent control, there can be no remedy for pretextual or bad faith evictions.

After hearing each side, the court stated its decision rested upon Civil Code section 1954.53, subdivision (e).

The trial court addressed the 2011 MAR first, concluding that Lawrence did not rest her objection upon the belief that the findings were flawed or that the record failed to support the final decision. Instead, Lawrence disputed the authority of the RSO, and the City acknowledged the RSO served as the basis for its decision in 2008. As such, the court concluded that the validity of the 2011 MAR could not be addressed until the legality of the RSO was determined.

In analyzing the conflicting RSO sections, the trial court looked at the four exceptions laid out in Costa-Hawkins with those found within the RSO. The court reviewed the doctrine of preemption, finding that Lawrence bore the burden of establishing Costa-Hawkins did preempt the RSO. The City could regulate this area if it did not overstep or encroach upon the boundaries and purpose set out within Costa-Hawkins. The court found the City received its authority within Costa-Hawkins (Civ. Code § 1954.53, subd. (e)), as the legislature's inclusion of this section makes a strong statement that local governments are permitted to maintain their right to regulate and monitor the grounds for eviction, in order to prevent pretextual evictions. A local government may regulate an after vacancy rental rate when its ordinance is directly tied to the regulation of pretextual eviction and the focus is to prevent bad faith evictions. Because the disputed RSO sections here regulate and monitor bad faith evictions, it found a reasonable relationship between maintaining post-vacancy rent control and the prohibited grounds for eviction. It found the RSO is not preempted by Costa-Hawkins.

8

The court found that the legislature would not have included this section if it did not wish to permit local governments to regulate the area of pretextual evictions, in some way.  It found the City's additional exceptions conform to Costa-Hawkins, particularly in their focus upon bad faith evictions.  It distinguished the court decisions cited by Lawrence, as the ordinances struck down  in those decisions did not aim to regulate good faith and bad faith evictions differently.

The trial court found the City's RSO qualified as a proper means of eviction control under Costa-Hawkins.  (Civ. Code, § 1954.53, subd. (e).)  It found the RSO is not void or preempted by Costa-Hawkins and the City did not abuse its discretion in applying it.

After the hearing, the trial court denied the petition for writ of mandate, entering judgment in favor of the City, Gant, and Burtnett.

Lawrence appealed on September 5, 2012.

CONTENTIONS ON APPEAL

Lawrence contends on appeal the trial court erred in denying the petition because (1) her right to appeal is not waived by the doctrine of collateral estoppel when she failed to respond within the 10-day period allocated by the RSC in 2008; (2) the City does not have permissible authority to create any additional exceptions to Costa-Hawkins and as such RSO section 17.40.020 is void; and (3) assuming the City has authority to create additional exceptions to Costa-Hawkins, the RSC's administrative procedures and resulting decision constituted an unlawful exertion of judicial powers.

DISCUSSION

The City contends that the doctrine of collateral estoppel bars Lawrence's appeal. While Lawrence challenged the 2011 MAR decision, that decision was based upon the initial determination by the City in 2008.  However, Lawrence expressly waived her right to appeal that MAR determination in 2008, as evidenced by her August 2008 e-mail to Gant and Burtnett.

9

This administrative proceeding was quasi-judicial in nature, and therefore subject to the doctrine of collateral estoppel. (*Pacific Lumber Co. v. State Water Resources* (1982) 37 Cal.4th 921, 944.) Collateral estoppel requires an issue be necessarily decided at the previous proceeding, that the decision itself be final, and that party against whom estoppel is sought was also a party. (*Id.* at p. 943.)

Here, Lawrence contests the MAR, a matter which the City settled conclusively in 2008. While this is a direct appeal of the 2011 decision, the hearing examiner stated on September 6, 2011, that the July 24 and August 26, 2008 determinations by the City were final and binding on Lawrence. Therefore, appealing the 2011 MAR is effectively appealing the 2008 MAR.

Lawrence received two notifications of the final decision in July and August 2008 and willingly let each stand. The City advised her in each letter that she could appeal if the determination was based on false or misleading information. She failed to appeal after the RSC mailed either notice. Furthermore, Lawrence and the City were both involved in the 2008 MAR decision.

In her reply brief, Lawrence argues that collateral estoppel of an administrative ruling does not apply when the agency has no authority to issue the ruling in the first instance. She cites *Woods v. Superior Court* (1981) 28 Cal.3d 668, *City of Lodi v. Randtron* (2004) 118 Cal.App.4th 337 and *City of Fillmore v. Board of Equalization* (2011) 194 Cal.App.4th 716.

In *Woods v. Superior Court* (1981) 28 Cal.3d 668, residents of an apartment building which was deemed unfit for habitation sought relocation funds from the county department of social services. The department rejected their claim and their subsequent request for an administrative hearing. The residents then petitioned for a writ of mandate in the superior court. The department filed a demurrer to the petition, which the superior court overruled. The California Supreme Court ultimately determined that the superior court properly overruled the demurrer and that the residents were entitled to contest the validity of the regulation upon which the denial of their claims was based. Lawrence

10

cites the portion of the opinion which states that courts may strike down void administrative regulations. (*Id*. at p. 679.) However, the *Woods* court also held that the validity of an administrative regulation can and should be raised at the administrative level. "[P]ermitting administrators an opportunity to construe challenged regulations in a manner to avoid their invalidation is preferable to requiring a court challenge. Moreover, in those cases in which the validity of such a regulation must be judicially resolved, the task of a reviewing court is simplified by a narrowing and clarification of the issues in an administrative hearing." (*Id*. at pp. 680-681.) Here Lawrence did not raise the validity of the RSO at the administrative level.

In *City of Lodi, supra*, 117 Cal.App.4th 337, an administrative abatement order was issued by the city of Lodi pursuant to a municipal environmental ordinance. Lodi had enacted the ordinance authorizing it to investigate and regulate the contamination of its soil and groundwater. The defendant did not comply with the ordinance procedures for contesting the order. (*Id.* at p. 348.) Lodi brought an action in the name of the "People of the State of California" and the trial court granted summary judgment and a mandatory injunction against the defendant. The defendant appealed, contending the abatement order was void and unenforceable and the municipal ordinance was preempted by state law. In reversing the trial court, the court of appeal found state court legislation specifically occupied the field of hazardous waste contamination and did not authorize a city to issue administrative orders for remedial action. The court found that because Lodi was preempted from enacting its own ordinance, the enforcing officer had no jurisdiction to issue the order and the defendant was not collaterally estopped from challenging Lodi's authority. (*Id*. at p. 361.)

Although Lawrence is contesting the validity of the rent ordinances and the ability of the City to enact such municipal regulations, we do not agree with Lawrence's position that *City of Lodi* compels a conclusion that collateral estoppel principles are inapplicable to this case. In *City of Lodi*, the administrative order was issued in 1998, and when Randtron failed to appeal, Lodi took a proactive position, filing suit soon after the

11

administrative order was issued. The matter was on appeal within three years from the issuance of the order. (*City of Lodi v. Randtron, supra,* 118 Cal.App.4th at p. 348.)

Here, Lawrence not only failed to take advantage of the administrative appeal procedure set forth by the City, she explicitly told Gant and Burtnett that she acquiesced in their determination and re-filed a City rent form setting the rent at $715.15, and renewed the lease for three years. She did not raise the lack of the City's power to raise the rent until August 2011, when she appealed the administrative hearing decision. Here, no attack on the validity of the City's power to limit the rent was raised when the City issued an MAR ruling in 2008. In fact no challenge was made at all to the ruling made by the City in 2008; Lawrence simply accepted the ruling and accepted the lowered rent for three years.

*City of Fillmore, supra,* 194 Cal.App.4th 716 is distinguishable as well. There, two cities sought the reallocation of local sales tax revenues from another city, the city of Fillmore. They petitioned the State Board of Equalization. The State Board of Equalization issued a decision in favor of the petitioning cities, and then later issued a supplemental decision. The issue in the case was whether the two cities had to exhaust their administrative remedies with respect to one decision before seeking judicial review of the other. (*Id*. at p. 729.)

The fact that Lawrence claims the RSO is preempted by state law does not excuse her from belatedly seeking a retroactive rent increase of more than twice the rate she had initially agreed upon. (*Oquendo v. California Institution for Women* (1989) 212 Cal.App.3d 520, 523 [unchallenged determination of the administrative board collaterally estopped the plaintiff from relitigating]; see *San Diego Municipal Employees Assoc. v. Superior Court* (2012) 206 Cal.App.4th 1447, 1462 [exhaustion of administrative remedies required even though jurisdictional authority of agency contested].) As tenants, Gant and Burtnett were entitled to certainty without fear that their rent could be retroactively raised any time their landlord decides to attack the validity of a municipal rent ordinance.

12

Lawrence also argues that collateral estoppel does not apply because the determination by the city was not made by "a tribunal having the requisite authority, the issue was not identical to the one which is sought to be relitigated, the proceeding did not result in a final judgment on the merits, and the party against whom the collateral estoppels is asserted was not a party in privity with a party at the prior proceeding. *Murray v. Alaska Airlines* (2010) 50 Cal.4th 860 answers those arguments.  In *Murray*, an administrative complaint was dismissed by the Secretary of Labor, and the complainant did not take advantage of the administrative review process.  The complainant then filed a lawsuit in state court.  (*Id.* at p. 866.)  Because the complainant had an opportunity to litigate issues in the proper administrative proceedings and refused to participate, the Supreme Court found that the Secretary's factual findings should be afforded preclusive effect in the subsequent court action.  (*Id.* at p. 879.)

DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                     **ZELON, J.**

13